# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE R. WAGNER and MARLENE D. WAGNER, his wife, | |
| Plaintiffs, | |
| v. | Civil Action No. 07-1008 |
| UNISON ADMINISTRATIVE SERVICES, LLC, | Magistrate Judge Cathy Bissoon |
| Defendant. | |

## MEMORANDUM ORDER

### I. MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 15). For the reasons that follow, Defendant's Motion for Summary Judgment will be granted.[1]

### BACKGROUND

#### A. Factual Background

This case arises out of a dispute over the coverage available to Plaintiff Gene R. Wagner ("Plaintiff") under a life insurance policy offered by his former employer, Defendant Unison Administrative Services, LLC ("Defendant" or "Unison") and underwritten by Jefferson Pilot Financial of Omaha, Nebraska ("Jefferson").

Plaintiff began working for Defendant in May 2005. (Def's Stmt. of Uncontested Material Facts in Support of Its Mot. for Summ. Judg. (Doc. 17) ("Def's Facts") at ¶ 1.) At the time he began working for Defendant, both Plaintiff and his wife, Marlene D. Wagner (who also is a Plaintiff), were over the age of 60. Id. at ¶ 2. Plaintiff attended an orientation meeting at the

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. See Consent forms (Docs. 6 & 7) ("voluntarily consent[ing] to have a United States Magistrate Judge conduct . . . all further proceedings . . . , including trial and entry of a final judgment").

inception of his employment during which the benefits available to employees were discussed, including the life insurance policy offered by Jefferson. Id. at ¶ 3. Under the policy, an employee automatically was eligible for $10,000 in life insurance coverage in exchange for the payment of a premium. Id. at ¶ 4. Employees, at their option, could elect to purchase additional life insurance for themselves or their spouses upon the payment of additional premiums. Id. at ¶ 5. For those employees (or spouses of employees) over the age of 60 seeking to purchase additional insurance, Jefferson required evidence of insurability. Id. at ¶¶ 6, 21, 26; see also Ex. 4 to Def's Brief in Supp. of Mot. for Summ. Judg. (Doc. 16) (hereinafter, "Life Insurance Enrollment Form" or "Application"); Ex. 9 to Def's Br. (Doc. 16) (hereinafter, "Certificate of Insurance"); Ex. 11 to Def's Br. (Doc. 16) (hereinafter, "SPD").

On or about May 28, 2005, Plaintiff submitted an application for additional insurance in the amount of $100,000 for himself[2] and $30,000 for his wife (hereinafter, "Additional Insurance"). Id. at ¶ 10; Ex. 5 to Def's Br. ("Pl's Life Ins. App."). By completing the Application, Plaintiff authorized Defendant to withhold the amounts for the premiums from his paycheck. Id. at ¶ 11; see also Pl's Life Ins. App. Accordingly, Defendant's payroll department, which is a department separate from the Human Resources department, withheld the authorized premium amounts throughout the period of Plaintiff's employment. (Def's Facts at ¶¶ 11, 13.) Defendant forwarded Plaintiff's application for life insurance to Jefferson. Id. at ¶ 12. Despite being over the age of 60 at the time of his application, Plaintiff did not submit evidence of insurability when he applied or before he resigned from Defendant's employ. Id. at ¶ 7. Plaintiff resigned from his employment with Defendant on August 31, 2006. (Compl. ¶ 5.)

---

[2] Plaintiff actually sought additional insurance in the amount of $90,000. The application for $100,000 reflected both the $10,000 offered automatically by Defendant, along with the additional insurance he sought.

During the duration of his employment, Plaintiff received two certificates of insurance, which reflected that the amount of insurance in effect was $10,000. (Def's Facts at ¶ 16.) Plaintiff never received a certificate of insurance reflecting the Additional Insurance he purportedly purchased in the amount of $90,000 for himself and the $30,000 for his wife. Id. at ¶ 17. Plaintiff never inquired about the fact that he did not receive other certificates of insurance. Id. at ¶ 18. By letter dated September 7, 2005, Jefferson denied Plaintiff's application for the Additional Insurance because it "ha[d] not received the information [it] requested." Id. at ¶ 23; Ex. 10 to Def's Br.

On September 13, 2006, after resigning from his employment, Plaintiff applied for portability coverage on his life insurance. (Def's Facts at ¶ 27; Ex. 12 to Def's Br.) Portability coverage allows employees to continue their life insurance coverage after their employment terminates. (Compl., Ex. C (Doc. 1); see also Life Insurance Enrollment Form.) By letter dated October 24, 2006, Jefferson denied portability coverage as to the additional life insurance because Plaintiff, in fact, did not obtain the additional insurance for himself or any insurance for his spouse as of the time he resigned. (Def's Facts at ¶ 28; Ex. 13 to Def's Br.) By letter dated October 31, 2006, Defendant intervened and requested that Jefferson underwrite an additional $90,000 of voluntary life insurance upon the submission of the evidence of insurability and assuming Plaintiff met Jefferson's underwriting standards. (Def's Facts at ¶ 29; Ex. 14 to Def's Br.) Although Plaintiff submitted his evidence of insurability to Jefferson on this occasion, he did not submit any evidence of insurability on behalf of his wife. Id. at ¶¶ 30-31.

Nevertheless, by letter dated November 14, 2006, Jefferson denied the additional life insurance coverage he sought because he did not meet Jefferson's underwriting standards. Id. at ¶ 34; Ex. 17 to Def's Br. Jefferson did not specify the reasons for Plaintiff's failure to meet the

underwriting standards. (Ex. 17 to Def's Br.) After Jefferson denied Plaintiff the additional life insurance coverage, by letter dated March 23, 2007, Defendant repaid Plaintiff, with compound interest, all of the monies withheld from his paycheck for the premiums paid in excess of the $10,000 in life insurance that Plaintiff had in place. (Def's Facts at ¶ 37.)

As for Plaintiff's medical history, the record provides that Plaintiff had numerous health problems pre-dating his employment with Defendant. (Def's Facts at ¶ 32.) For example, in 2001 and 2003, Plaintiff had stents inserted to address heart and artery problems. Id. Plaintiff has suffered from high blood pressure since 1974 and has been treating this with medication since the same time. Id. The record shows that the high blood pressure reading he had in November 2006 at the time he submitted his evidence of insurability was the same as his blood pressure reading in May 2005 when he originally sought to apply for the Additional Insurance. Id. In addition, Plaintiff has suffered from Type II diabetes since 1984 and has been taking medication to treat his diabetes since that time. Id. As of late 2005, Plaintiff also began taking insulin to treat his diabetes. Id. Finally, since 2002, Plaintiff has been suffering from depression and has been taking medication to treat his depression. Id. at ¶ 33.

## B.  Procedural Background

Plaintiffs filed their Complaint in the Court of Common Pleas of Washington County on April 13, 2007. (Doc. 1, Ex. A.) On July 18, 2007, Defendant timely filed a Notice of Removal to remove Plaintiffs' action to this Court based on federal question jurisdiction. (Def's Notice of Removal at ¶¶ 6-9 (Doc. 1).) Defendant asserted that Plaintiffs' claims arose under the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Id. On August 1, 2007, Plaintiffs filed a Motion to Remand. (Doc. 8.) On November 28, 2007, Magistrate Judge Francis X. Caiazza issued an Opinion and Order denying Plaintiffs' Motion to Remand, thereby maintaining jurisdiction over Plaintiffs' action. (Doc. 11.) In his Opinion and

Order, Judge Caiazza determined that the life insurance plan at issue is an ERISA plan and that "ERISA is applicable." Id. at 4, 8.

Defendant now moves for summary judgment. Defendant primarily argues that Plaintiffs' claims are preempted by ERISA. Defendant additionally argues that there are no genuine issues of material fact as to Plaintiffs' claims. This case is now ripe for disposition.

## ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. ERISA Preemption

In their Complaint, Plaintiffs have asserted claims for breach of contract (Count I), declaratory relief (Count II), and violation of the Pennsylvania Wage Payment Act (Count III). See generally Compl. Defendant asserts that Plaintiffs' claims are preempted by ERISA because they relate to an ERISA plan.

As discussed above and as Judge Caiazza previously determined, the life insurance plan at issue is an ERISA plan. It is well-established that ERISA preempts state law claims to the extent that such claims "relate to" an employee benefit plan:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

29 U.S.C. § 1144(a). Courts have construed the phrase "relate to" broadly to further the congressional intent to "establish [employee benefit] plan regulation as exclusively a federal

concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). Thus, the phrase "relate to" is to be:

> given its broad common-sense meaning, such that a state law 'relates to' a benefit plan 'in the normal sense of the phrase if it has a connection with or reference to such a plan.' The preemption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements. 'Even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.'

McMahon v. McDowell, et al., 794 F.2d 100, 106 (3d Cir. 1986) (quoting Metropolitan Life Ins. Co. v. Mass., 105 S. Ct. 2380, 2389 (1985)).

In addressing preemption issues, courts also have examined the policy underlying ERISA. As the Supreme Court explained, "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). The Court recognized that Congress' objective in passing ERISA was "to avoid multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 657 (internal quotes omitted).

With these principles in mind, the Court turns to Plaintiffs' claims.

### 1. *Count III: Pennsylvania Wage Payment and Collection Law*

In Count III of their Complaint, Plaintiffs assert that Defendant violated Pennsylvania's Wage Payment and Collection Law by collecting and retaining "premiums from the period of his employment to his termination" and that this retention caused Plaintiff to be "deprived of income for which he was entitled." (Compl. at ¶¶ 30-32.) Other than generally raising the argument that Plaintiffs' claims are preempted by ERISA, Defendant has not specifically addressed whether

Count III, specifically, is preempted by ERISA. Instead, both parties have focused on whether issues of material fact remain as to this claim. The Court, however, need not reach the merits of Count III because the Court finds that it is preempted by ERISA. See McMahon v. McDowell, 794 F.2d 100, 105-08 (3d Cir. 1986).

In McMahon, the Court of Appeals for the Third Circuit affirmed the district court's holding that a claim pursuant to the WPCL for unpaid wages, fringe benefits, and pension plan contributions was preempted. Id. at 108. The Court observed that "[t]he WPCL and other state law claims are therefore preempted – insofar as they authorize the recovery of pension contributions and fringe benefits from the individual defendants – if they 'relate' to the . . . employee benefit plans." Id. The Court found that the WPCL related to the pension plan at issue in that "Plaintiffs would be able to determine the amount of any recovery under the WPCL only by reference to the benefit plans and the provisions of ERISA." Id. at 106; see also Grabski v. Aetna, Inc., 43 F. Supp. 2d 521, 527 (E.D. Pa. 1999) (finding that WPCL claim was preempted because "Plaintiffs would be able to determine the amount of any recovery under the WPCL . . . only by reference to the Plan at issue and the provisions of ERISA").

Likewise, here, to establish an alleged right to recovery under the WPCL, Plaintiffs must reference the terms of the Plan, including the premiums they were required to pay for the Additional Insurance they sought. As in McMahon, then, Plaintiffs' claim under Pennsylvania's WPCL is preempted. Because it is preempted by ERISA, the Court grants Defendant's Motion for Summary Judgment as to Count III of Plaintiffs' Complaint asserting violations of Pennsylvania's Wage Payment and Collection Law.

### 2. *Counts I and II: Breach of Contract and Declaratory Relief*

In Count I, Plaintiffs allege that Defendant breached its purported contract to provide him with life insurance coverage. In Count II, Plaintiffs seek a declaration that they are entitled to

life insurance coverage. Under the preemption principles set forth above, Plaintiffs' state law claims for breach of contract and declaratory relief plainly are preempted because they relate to the life insurance plan. See Early v. United States Life Ins. Co., 222 Fed. Appx. 149, 153 (3d Cir. 2007) ("State law claims of . . . breach of contract, such as those [plaintiff] asserts, would ordinarily fall within the scope of ERISA preemption, if such claims relate to an ERISA-governed benefits plan.") (citing Pilot Life, 481 U.S. at 54-57); see also Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001); Grabski, 43 F. Supp. 2d at 527 (finding breach of contract claim preempted because it "relates to" an ERISA plan in that "the existence of [defendant's] Plan is a crucial factor to establishing liability"). The Court, therefore, grants Defendant's Motion for Summary Judgment as to Counts I and II of Plaintiffs' Complaint.

However, as Judge Caiazza recognized in his Order denying Plaintiffs' Motion to Remand, an issue exists here as to the existence of complete ERISA preemption. (Opinion and Order of Court at 3-4 (Doc. 11).) If complete preemption exists as to Plaintiffs' claims, then the Court must analyze the claims under ERISA. The complete preemption doctrine is a "corollary or an exception to the 'well-pleaded complaint' rule," allowing removal in cases "so completely preempt[ed]" by Congress that "any civil complaint raising this . . . group of claims is necessarily federal in character. . . ." See Wood v. Prudential Ins. Co. of America, 207 F.3d 674, 678 (3d Cir. 2000) (citations and internal quotations omitted). In other words, certain federal laws, including ERISA, "so sweepingly occupy the field of regulatory interest that any claim brought within that field, however, stated in the complaint, is in essence a federal claim." Levine v. United Healthcare Corp., 402 F.3d 156, 162 (3d Cir. 2005); see also Pryzbowski, 245 F.3d at 271 (holding that under Supreme Court precedent, "there can be no question that causes of action

within the scope of the civil enforcement provisions of § [1132](a) [are] removable to federal court" under the complete preemption doctrine) (internal citations and quotations omitted).

Although Judge Caiazza did not specifically hold the complete preemption doctrine applied to Plaintiffs' Complaint, the Court now finds and concludes that complete preemption applies to Plaintiffs' claims. In this regard, the Court notes that the parties do not dispute the applicable ERISA section should Plaintiffs' claims be preempted. In particular, the parties agree that Plaintiffs' claims arise under Section 502(a)(1).

Under Section 502(a)(1)(B) of ERISA, a participant, inter alia, may bring an action "to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The provision allows an individual to "obtain accrued benefits due, a declaratory judgment about the entitlement of benefits, or an injunction to require the administrator to pay benefits." Pryzbowski, 245 F.3d at 272. Where a claim "challenges the administration of or eligibility for benefits," such a claim "falls within the scope of a § 502(a) and is completely preempted." Id. at 273; see also Pergosky v. Life Ins. Co. of North Am., No. 01-4059, 2003 WL 1544582, at *7 (E.D. Pa. Mar. 24, 2003) (finding that plaintiff's claim for the denial of long-term disability benefits under a conversion policy fell "within the scope of ERISA's civil-enforcement provisions" and, therefore, completely preempted). Through their breach of contract and declaratory judgment claims, Plaintiffs challenge their eligibility for benefits under the life insurance plan, as well as their rights to portability coverage under the plan, and seek a declaration that they are entitled to such benefits. As such, their claims are completely preempted by ERISA Section 502. Pryzbowski, 245 F.3d at 271-72. Because

Plaintiffs' claims are completely preempted by ERISA, the Court will proceed under the civil enforcement provisions of Section 502.

### B. ERISA § 502(a)(1) and Plaintiffs' Breach of Contract and Declaratory Judgment Claims

Having determined that Plaintiffs' breach of contract and declaratory judgment claims are completely preempted by ERISA, the only issue remaining before the Court is whether Plaintiffs' have raised genuine issues of material fact as to their ERISA claim.[3] As discussed above, the parties do not disagree on the potentially applicable ERISA provision, but they do disagree on whether Plaintiffs have proffered sufficient evidence to maintain a claim under that provision and whether any issues of fact remain such that summary judgment is inappropriate. Defendant asserts that the only provision possibly applicable to Plaintiffs' allegations is ERISA Section 502(a)(1)(B) and that Plaintiffs have failed to demonstrate an issue of fact as to this claim. (Def's. Br. at 9-10.) Consistent with Defendant, Plaintiffs unequivocally maintain that the "Complaint falls within subsection (B) [e.g., 502(a)(1)(B)] relative to recovery of benefits and/or to enforce rights under the terms of the plan." (Pls' Opp. at 6.) But, Plaintiffs maintain that issues of fact remain as to this claim. Id. at 8. The Court determines that even assuming that Plaintiffs may state a claim under ERISA Section 502(a)(1)(B), there are no triable issues of fact as to that claim.

Claims under Section 502(a)(1), through which individuals may seek the recovery of benefits under an ERISA plan, are governed by breach of contract principles. See Early v. United States Life Ins. Co., 222 Fed. Appx. 149, 153 (3d Cir. 2007) ("'Breach of contract

---

[3] The Court notes that Plaintiffs did not amend their Complaint after the denial of remand. Plaintiffs acknowledge that they did not file an amended complaint, but assert that they did not do so because they were not so ordered. (Pls' Opp. at 5.) Both Plaintiffs and Defendant have presented arguments to the Court as to the applicability of ERISA (and specifically, Section 502(a)(1)(B) of ERISA) to Plaintiffs' allegations. Accordingly, the Court will proceed to analyze whether a genuine issue of material fact exists as to Plaintiffs' 502(a)(1)(B) claim under ERISA.

principles, applied as a matter of federal law, govern claims for benefits due under an ERISA plan.'") (quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 572 (3d Cir. 2006)). Thus, unambiguous language in a policy or an ERISA plan document should be given "its natural meaning." Id. (citing Bill Gray Enters., Inc. v. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 220 n. 13 (3d Cir. 2001)).

The terms of the life insurance plan at issue are unambiguous. Under the terms of the life insurance plan, to obtain additional life insurance coverage, an individual over the age of 60 applying for additional life insurance is required to submit evidence of insurability. See Def's Facts at ¶¶ 6, 21, 26; see also Ex. 4 to Def's Br. (Life Insurance Enrollment Form); Ex. 9 to Def's Br. (Certificate of Insurance); Ex. 11 to Def's Br. (SPD). It is also undisputed that Plaintiff did not submit any evidence of insurability at the time he applied for the insurance. The evidence shows that Jefferson, in fact, denied Plaintiff's application for life insurance because it had not received the information it required. Moreover, even after Plaintiff submitted evidence of insurability, Jefferson again denied Plaintiff's application for life insurance. As such, it is undisputed that Plaintiff was not enrolled for the additional life insurance and did not have the Additional Insurance in place for which he seeks recovery under ERISA.

Under such factual circumstances, Plaintiff cannot maintain an ERISA claim to recover benefits because, quite simply, there are no benefits due to him. Slater v. Newell Rubermaid, Inc., No. 4-2096, 2005 WL 1651970, at *2 (M.D. Pa. July 8, 2005) (finding that plaintiff's claim under ERISA 502(a)(1)(B), which was premised on the theory that defendant improperly failed to notify him of his rights to portability coverage, "is not viable . . . because it is not supported by the provisions of the plan. There is no provision in the plan requiring [defendant] to notify [plaintiff] after his employment was terminated of his right to portable life insurance coverage");

White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28-29 (4th Cir. 1997) (rejecting claim for conversion benefits by plaintiff who had benefits simultaneously under both a group policy and a conversion because the "written terms of this ERISA plan plainly prohibit simultaneous recovery under the group policy and a conversion policy, and ERISA demands strict adherence to the clear language of this employee benefit plan"); Swain v. New Hampshire Elec. Co-Op., Inc., No. 01-196, 2001 WL 1326580, at *3-4 (D. N.H. Oct. 19, 2001) (dismissing ERISA claim for life insurance benefits under Section 502(a)(1)(B) because "neither plaintiff nor plaintiff's decedent meet the eligibility criteria for the benefit plaintiff seeks to collect" insofar as plaintiff "did not apply for an individual life insurance policy within the time period specified [in the plan]").

Plaintiffs attempt to raise a genuine issue of material fact by asserting that Mr. Wagner was "unaware of [the insurability] requirement and in fact, did not learn of this requirement until after his resignation . . . ." (Pls.' Opp. at 9.) Plaintiffs further assert that Mr. Wagner "denies receiving any of these documents wherein insurability was discussed and listed as a requirement." Id. Plaintiffs argue that these facts give rise to a genuine issue of material fact as to the insurability requirement. The Court disagrees. That Plaintiffs may not have been aware of the requirement does not alter the fact that the unambiguous language of the life insurance plan requires those in Plaintiffs' position to submit evidence of insurability. Moreover, although Plaintiff asserts a lack of awareness as to the insurability requirement, the record demonstrates otherwise. Plaintiffs' evidence is insufficient to create a triable issue of fact.

The life insurance application, or enrollment form, plainly sets forth the insurability requirement and provides that evidence of insurability is required for applicants, like Mr. Wagner, who are over the age of 60. In particular, the record reveals that the life insurance

application is a "one-sided application sheet and a two-sided sheet containing terms and conditions on one side and premium rates on the other side." (Ex. 4 to Def's Br. (Life Insurance Enrollment Form); Ex. 2 to Def's Br. ("Ludlum Dep.") at 18.) Among the terms included on the two-sided sheet is the evidence of insurability requirement at issue in this case. (Ex. 4 to Def's Br. (Life Insurance Enrollment Form).) The record also demonstrates that Defendant routinely distributed the application for life insurance "to new employees since the inception of the Jefferson Pilot program." (Ex. 3 to Def's Br. ("Ludlum Decl.") at ¶ 1; Ludlum Dep. at 18.) Defendant's Director of Human Resources, Beverly Ludlum, additionally testified that she conducted Plaintiff's new employee orientation meeting, that the application for life insurance "should have been in the packet of information that was supplied to new hires at that time," and that, to the best of her knowledge, the complete application (including the two-sided sheet containing the terms and conditions of the insurance) was in Plaintiff's packet of information. (Ludlum Dep. at 22-23.) Ms. Ludlum further testified that it was "highly unlikely" that the two-sided sheet was omitted from Plaintiff's packet of information. Id.[4]

Plaintiff has not rebutted this testimony.[5] During his deposition, Plaintiff testified that he did not **recall** receiving the entire application, but significantly did not **deny** that he received the

---

[4] The Summary Plan Description ("SPD") also reflects the insurability requirement. Like the application form itself, Plaintiffs do not raise a genuine issue of material fact as to receipt of the SPD. Defendant asserts that the SPD "is routinely distributed to the employees within a few weeks of their becoming insured." (Ludlum Aff. at ¶ 6.) In his deposition, Mr. Wagner testified that he "acquired" the SPD, but did not recall how or when he acquired it. (Pl. Dep. at 26-28.) In response to a question as to whether he could have received it in May or June of 2005, Mr. Wagner replied that he could not recall. Id. at 27.
Mr. Wagner also thought that he perhaps had "acquired" it in September 2006 from a co-worker after he had learned that he could not obtain portability coverage. Id. at 28-29.

[5] Mr. Wagner has submitted an Affidavit in connection with his opposition to Defendant's Motion for Summary Judgment wherein he asserts that "[a]t no time during my employment with Unison was I advised of a requirement that the $100,000.00 and $30,000.00 insurance policies were subject to proof of insurability." (Aff. of G. Wagner at ¶ 4, attached as Ex. 1 to Pl's Resp. to Def's Concise Stmt of Mat. Facts (Doc. 19).) As discussed infra, contrary to his Affidavit, Mr. Wagner testified that he did not remember, or could not recall, receiving all of the pages of the life insurance application form; he did not testify that he had not received all of the pages of the form. Insofar as Mr. Wagner's affidavit contradicts his prior sworn deposition testimony, it cannot be proffered to create a genuine issue of material fact either as to whether

entire application. (Pl's Dep. at 13-17.) Far from denying receipt of it, Plaintiff testified that he "didn't look at the other pages," that he does not know whether he "got those other pages or not," and that he "really do[esn't] recall."[6] Id. at 16. A review of his testimony quite simply provides that he does not recall – or does not remember – receiving the application. Even in his Opposition, Plaintiffs assert that Mr. Wagner "does not **recall** ever seeing or receiving the two-sided page." (Pls.' Opp. at 2) (emphasis added). Against Defendant's unrebutted evidence that the entire life insurance application was included in the packet of information that he received, Plaintiff's failure to recall seeing or receiving pages 2 and 3 of the life insurance application does not create a genuine issue of material fact as to whether he knew of the insurability requirement. See Tinder v. Pinkerton Security, 305 F.3d 728, 735-36 (7th Cir. 2002) (finding that employee failed to create a genuine issue of fact for trial where employee asserted in an affidavit that she "[did] not recall seeing or reviewing the Arbitration Program brochure" and employer asserted to the contrary); cf. Kirleis v. Dickie, McCamey & Chilcote, P.C., ___ F.3d ___, 2009 WL 750415, at *5 (3d Cir. Mar. 24, 2009) (discussing the Seventh Circuit's decision in Tinder and distinguishing between allegations that plaintiff "was never provided with a copy" of the relevant documents and allegations that the plaintiff "merely could not 'recall seeing or reviewing' them" and concluding that the plaintiff's evidence that she never received the documents, as opposed to being unable to recall seeing them, was sufficient to create a genuine issue of material fact).[7]

---

the proof-of-insurability requirement existed or whether he was advised of it and the Court will not consider the affidavit on this point. See In re CitX Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) (affirming decision to disregard an affidavit submitted at summary judgment based on the "sham affidavit" doctrine by which a court may disregard "'an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony'") (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)).

[6] The Court notes that the page of the application that Mr. Wagner cannot recall receiving is attached as Exhibit C to Plaintiff's Complaint.

[7] The Court notes that, in addition to the life insurance application form, several other documents reflected the evidence of insurability requirement, including the Summary Plan Description and the Certificates of Insurance. As with the application form, Mr. Wagner testified that he did not receive these documents. As

Although far from clear, Plaintiffs' claims appear to be premised on the notion that Defendant should be compelled to provide him with the Additional Insurance based on his belief that he had the Additional Insurance in place, which belief stems from the fact that "premiums were forwarded to Jefferson Pilot and [he] was never advised during the term of his employment to the contrary." (Pls' Opp. at 9.) The Third Circuit has rejected an ERISA claim on facts comparable to those presented here. See Early, 222 Fed. Appx. at 153.

In Early, the Court of Appeals for the Third Circuit concluded that Plaintiff's breach of contract claim, even assuming that it was governed by ERISA, failed as a matter of law given the unambiguous language of the policy at issue. Id. at 152-53. There, the plaintiff (a beneficiary) alleged that he improperly was denied life insurance benefits under his former wife's (the participant) life insurance policy following her death. Id. at 151. Under the unambiguous language of the policy, plaintiff was ineligible for the life insurance proceeds because the benefit ended "for a spouse" on "the date her marriage ends by divorce or annulment." Id. at 151-52. Thus, like here, the plaintiff simply was ineligible for the benefit at issue based on the unambiguous plan language. Nevertheless, the plaintiff asserted that he continued to pay premiums on the life insurance policy and argued that "his reasonable expectations as an insured would be frustrated were he not entitled to recover the insurance benefit." Id. at 152-53. The court rejected this argument in connection with his ERISA claim, finding that "application of the reasonable expectations doctrine would require as a 'predicate fact that the contract be

---

to the Certificates of Insurance in particular, Mr. Wagner again testified that he received the first page of the document reflecting the amount of coverage he maintained, but not the subsequent pages reflecting the terms of the coverage, including the insurability requirement. The Court finds it remarkable that Mr. Wagner repeatedly received only portions of relevant documents (e.g., the first page of the application and the first page of the Certificates of Insurance), but not those portions of the documents that reflected the insurability requirement. Nevertheless, the Court, as it must on a motion for summary judgment, will draw all reasonable inferences in Plaintiffs' favor and assume, for the sake of Defendant's Motion, that Mr. Wagner did not receive the pages of the Certificates of Insurance reflecting the insurability requirement.

ambiguous,' as 'general ERISA principles simply do not permit us to rewrite the terms of the insurance contract.'" Id. at 153 (quoting Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1011 (10th Cir. 2000)).

The Court of Appeals for the Fourth Circuit also has rejected a theory similar to Plaintiffs' here in a case in which the plaintiff raised the doctrine of waiver. See White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28-29 (4th Cir. 1997). In White, the plaintiff-insured sought a declaration that he was entitled to coverage under a conversion policy at the same time that he had coverage under the group policy. Id. at 26. Under the unambiguous language of the policies, however, the insured was not permitted to have conversion coverage while he also had group coverage. Id. Upon discovery of the mistake, the defendant attempted to repay the premiums the insured had mistakenly paid. Id. at 29. The insured asserted that his continued payment of the premiums on the conversion policy entitled him to coverage on the basis that, among other things, the defendant waived the right to deny him coverage on the conversion policy. Id. The court rejected the argument, stating that plaintiff's argument "would have us hold that [defendant's] mistaken acceptance of premiums constituted a knowing waiver of rights that is in direct conflict with the plain written terms of an ERISA plan. ERISA, however, does not provide for such unwritten modifications of ERISA plans." Id.

In sum, the Plan at issue here is unambiguous and, as discussed above, clearly provides that evidence of insurability is required for those, like Plaintiffs, who are over the age of 60 when applying for additional life insurance under the Plan. Plaintiffs' argument that he continued to pay premiums on the Additional Insurance and therefore, should be provided with that Insurance is simply not the law under ERISA 502(a)(1)(B). Plaintiffs have not raised a genuine issue of material fact as to the existence or applicability of the insurability requirement, or as to whether

Plaintiffs fulfilled this requirement. For all of these reasons, Plaintiffs' claims under the civil enforcement provision of ERISA in Section 502(a)(1)(B) fail and summary judgment in favor of Defendant is appropriate.[8]

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (Doc. 15) is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

March 31, 2009

cc (via email):

W. Patric Boyer, Esq.
Hayes C. Stover, Esq.
Jeremy A. Mercer, Esq.

---

[8] As a final point of note, the Court recognizes that Defendant argues that Mr. Wagner never was qualified for the additional life insurance he sought given his health conditions and cannot proffer "any evidence that he would have qualified for the additional insurance at any time." (Def. Br. at 13.) In his Opposition, Mr. Wagner asserts his belief that he did not obtain the insurance because he began to take insulin – something which occurred after he initially applied for the Additional Insurance. (Pl's Opp. at 10.) Plaintiff additionally asserts that "there exists a question of fact as to whether he was qualified." The Court observes that there is no evidence – from either party – indicating the basis for Jefferson's denial of Plaintiffs' application for Additional Insurance. Thus, anything that the parties proffer, or that the Court might conclude, is a product of pure speculation. Certainly, the undisputed record evidence suggests that Mr. Wagner suffered from a multitude of health problems that began well before he applied for the Additional Insurance and that there were no significant changes in his medical history in the time that he worked for Defendant. However, the Court agrees that an issue of fact exists as to whether Plaintiffs could have obtained the Additional Insurance they sought at the time they originally applied for it in May 2005. Nonetheless, the Court finds that the dispute over Mr. Wagner's qualifications is immaterial for the reasons set forth above and in light of the undisputed fact that Mr. Wagner did not submit any evidence of insurability with his application in May 2005, as required by the plain terms of the ERISA plan at issue.